UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
22-1476

| UNITED STATES OF AMERICA, Plaintiff/Appellee, v. JUSTIN TREANTON, Defendant/Appellant. | APPEAL IN A CRIMINAL CASE |
|---|---|

APPEAL FROM THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

HON. STEPHANIE M. ROSE (NOW) CHIEF JUDGE

BRIEF OF APPELLANT JUSTIN TREANTON

Jack E. Dusthimer, Attorney at law
1503 Brady Street
Davenport, Iowa 52803-4622

(563) 323-8344
(563) 323-7452 (FAX)

ATTORNEY FOR JUSTIN TREANTON

SUMMARY OF THE CASE, REQUEST FOR ORAL ARGUMENT:

JUSTIN TREANTON, hereinafter TREANTON, appeals after having plead guilty to two child pornography based counts of the four count September 9, 2020 Indictment. The Plea Agreement, dated November 5, 2021, reserved certain appeal rights to TREANTON - specifically regarding the denial of a Motion to Suppress. (R. Doc. 53). At the February 28, 2022 Sentencing TREANTON received the maximum sentences for Count 1 (360 months) and Count 4 (240 months), to run consecutively. See Judgment in Criminal Case, R. Doc. 74, dated February 28, 2022.

The Plea Agreement (R. Doc. 53) acknowledged that "pursuant to Federal Rule of Criminal Procedure 11(a)(2), Defendant preserves the right to appeal the Court's denial of Defendant's motion to suppress entered on June 28, 2021 (Court's Order R. Doc. 42)".

Counsel asserts the arguments regarding the Suppression hearing justifies consideration for 10 minutes Oral Argument.

CORPORATE DISCLOSURE STATEMENT:

As required by F.R.Ap.P. 26.1, Counsel states this is an appeal for an individual criminal defendant, and no corporation is involved.

2

TABLE OF CONTENTS

SUMMARY OF THE CASE, REQUEST FOR ORAL ARGUMENT........  2

CORPORATE DISCLOSURE STATEMENT...........................  2

TABLE OF AUTHORITIES, CASES, STATUTES AND OTHER
        AUTHORITIES...................................................  4

JURISDICTIONAL STATEMENT.................................  6

STATEMENT OF ISSUES PRESENTED FOR REVIEW................ 7

STATEMENT OF THE CASE.....................................  8

SUMMARY OF THE ARGUMENT................................. 16

ARGUMENT................................................ 17

CONCLUSION..............................................  32

CERTIFICATE OF FILING ....................................  33

CERTIFICATE OF SERVICE...................................  33

CERTIFICATE OF COMPLIANCE...............................  34

ADDENDUM...............................................  34

Appellate Case: 22-1476    Page: 3    Date Filed: 05/16/2022 Entry ID: 5157748

TABLE OF AUTHORITIES, CASES, STATUTES AND OTHER
AUTHORITIES

## FEDERAL DECISIONS

*Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Mapp v. Ohio*, 367 U.S. 643 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Miranda v. Arizona*, 384 U.S. 436 (1966). . . . . . . . . . . . . . . . . . 17, 18, 20, 21

*Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Stansbury v. California*, 511 U.S. 318 (1994) . . . . . . . . . . . . . . . . . . . . . 18, 28

*United States v. Atkins*, 250 F.3d 1203 (8th Cir. 2001). . . . . . . . . . . . . . . 29

*United States v. Barron*, 557 F.3d 866 (8th Cir. 2009). . . . . . . . . . . . . . . . 30

*United States v. Candie*, 974 F.2d 61 (8th Cir.1992). . . . . . . . . . . . . . . 30, 31

*United States v. Cook*, 842 F.3d 597 (8th Cir. 2016). . . . . . . . . . . . . . . . . 18

*United States v. Ferguson*, 970 F.3d 895 (8th Cir. 2020). . . . . . . 20, 26-28

*United States v. Giboney*, 863 F.3d 1022 (8th Cir. 2017). . . . . . . . . . . . . . 17

*United States v. Griffin*, 922 F.2d 1343 (8th Cir. 1990). . . . . . . . . . . . . . 20

*United States v. Hammer*, 3 F.3d 266 (8th Cir.1993). . . . . . . . . . . . . . . . . 31

*United States v. Harris*, 747 F.3d 1013 (8th Cir. 2014). . . . . . . . . . . . . . . 17

*United States v. Laurita*, 821 F.3d 1020 (8th Cir. 2016)). . . . . . . . . . . 19, 20

*United States v. Maggard*, 156 F.3d at 843 (8th Cir. 1998). . . . . . . . . . . . 30

*United States v. Maltais*, 403 F.3d 550 (8th Cir. 2005). . . . . . . . . . . . . . . 20

*United States v. Orozco-Rodriguez,* 220 F.3d 940 (8th Cir. 2000). . . . . . 30

*United States v. Padilla-Pena*, 129 F.3d 457 (8th Cir.1997). . . . . . . . . . . 30

*United States v. Parker*, 993 F.3d 595 (8th Cir. 2021). . . . . . . . . . . . . . 17, 18

*United States v. Perez-Sosa*, 164 F.3d 1082 (8th Cir. 1998). . . . . . . . . . . . 20

*United States v. Phelps*, 536 F. 3d 862 (8th Cir. 2008). . . . . . . . . . . . . . . 30

*United States v. Powills*, 537 F.3d 947 (8th Cir. 2008). . . . . . . . . . . . . . . 30

*United States v. Riesselman*, 646 F.3d 1072 (8th Cir. 2011). . . . . . . . . . . . 21

*United States v. Tamayo-Baez*, 820 F.3d 308 (8th Cir. 2016). . . . . . . . . . . 17

*United States v. Watson*, 480 F.3d 1175 (8th Cir.2007). . . . . . . . . . . . . . . 29

*United States v. Whiting*, 522 F.3d 845 (8th Cir. 2008). . . . . . . . . . . 28, 29

*United States v. Williams*, 760 F.3d 811 (8th Cir. 2014). . . . . . . . . . . 19, 20

*Weeks v. United States*, 232 U.S. 383 (1914). . . . . . . . . . . . . . . . . . . . . . . . . 21

*Williams v. New York*, 337 U.S. 241 (1949). . . . . . . . . . . . . . . . . . . . . . . . . 31

4

## STATUTES

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
18 U.S.C. §3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31
18 U.S.C.§3742(a)(1-4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
28 U.S.C.§1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

## RULES OF PRACTICE

Federal Rule Appellate Procedure 4.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Federal Rule Criminal Procedure  11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-14

Appellate Case: 22-1476     Page: 5     Date Filed: 05/16/2022 Entry ID: 5157748

# JURISDICTIONAL STATEMENT

This is an appeal from a Southern District of Iowa criminal case after a Plea and February 28th Sentencing by (now Chief) Judge Stephanie Rose. In federal criminal cases (offenses against the laws of the United States), the federal district courts of the United States have subject matter jurisdiction under 18 U.S.C. § 3231. The appellate court has jurisdiction of the appeal pursuant to 28 U.S.C. §1291: "The Court of Appeals...shall have jurisdiction of appeals from all final decisions of the district courts of the United States * * *." A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence - 1) was imposed in violation of law; 2) was imposed as a result of an incorrect application of the sentencing guidelines * * * ." 18 U.S.C. §3742(a)(1-2). A Judgment and Sentence is considered a Final Order for Appeal purposes. See, generally, Federal Rule Appellate Procedure 4(b)(1)(A).

The Plea was before Magistrate Judge Stephen B. Jackson Jr. on 2021 November 5  and the Sentencing was on 2022 February 28. A Notice of Appeal was filed being 2022 March 7 (R. Doc. 77). This is within the 14 day time period for timely Notice of Appeal.

6

STATEMENT OF ISSUES PRESENTED FOR REVIEW

DIVISION I.  THE TRIAL COURT ERRED IN DENYING TREANTON'S MOTION TO SUPPRESS EVIDENCE - BASED ON DETERMINATION IT WAS A NON-CUSTODIAL STATEMENT.

*United States v. Ferguson*, 970 F.3d 895, 901 (8th Cir. 2020)

*United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990))


DIVISION II.  THE SENTENCING COURT ABUSED ITS DISCRETION IN SENTENCING TREANTON WITH A SENTENCE BEYOND A SENTENCE "NOT GREATER THAN NECESSARY".

*Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)

*Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)

*United States v. Whiting*, 522 F.3d 845 (8th Cir. 2008)

Appellate Case: 22-1476    Page: 7    Date Filed: 05/16/2022 Entry ID: 5157748

## STATEMENT OF THE CASE

<u>Nature of the Case</u> :  This is an appeal in a criminal case, after TREANTON plead guilty to two of the four counts regarding Child Pornography offenses.  TREANTON'S prior Motion to Suppress statements was denied.  See Order, filed 2021 June 6, R. Doc. 42.

<u>Course of Proceedings</u>: In 2020 TREANTON was charged in multiple, various, Child Pornography offenses.  Indictment filed 2020 September 9, R. Doc. 1. New counsel (undersigned) was appointed after TREANTON's prior counsel was allowed to withdraw. (Appointment on or about 2021 Sept 21, No Docket #).

## PRE TRIAL STATUS

TREANTON's prior counsel filed a Motion to Suppress his statements to law enforcement.  R. Doc. 33.  As noted by the Court, within the Suppression hearing transcript: *" We are here for purposes of resolving the defendant's motion to suppress his custodial un-Mirandized statements and all evidence found as a result of and based upon those statements filed at Docket 33 on April 1st of 2021. The Government has filed a timely resistance to that petition*. Italics added, Suppression hearing Page 3 Line 12-16 (hereinafter Suppression 3L12-16).

8

Specifically, "*the real fighting issue in this case is whether or not the manner in which the defendant was initially encountered by Homeland Security officers and taken into custody initially impacts the manner in which his later statements should be viewed. [¶] I don't think there's any dispute here that during the hour and 45 minutes or so that he was being questioned by officers that he was not provided with a Miranda warning. I don't think there's any dispute that he was told that he was free to go, that he was told he didn't have to answer any questions if he didn't want to, and that he was told those things on multiple occasions. [¶] I think, as I understand it, the issue just becomes did whatever happened with his initial detention color everything else to such an extent that his later statements should be suppressed.*"  Italics added. Suppression 4L11 - 5L1.

The Court denied the Motion to Suppress, finding it was not a custodial interrogation, nor was TREANTON's will "overborne".  Order dated June 29, 2021, R. Doc. 42, term quoted page 6,7.

PLEA

The Plea was before Magistrate Jackson. After being placed under oath[1] TREANTON answered the questions necessary for the Court to

---

[1]Federal Rule Criminal Procedure (hereinafter RCrP) 11(b)(1) "placed under oath".

Appellate Case: 22-1476     Page: 9     Date Filed: 05/16/2022 Entry ID: 5157748

determine his competency to enter a guilty Plea and his consent to having a
Magistrate Judge take the Plea(s). The Consent (R. Doc. 52) was discussed,
and confirmed with TREANTON. Plea Transcript (hereinafter Plea, then
page/line) 2L13-17. It then shifted to the Magistrate Judge's warnings
about prosecution for perjury or false statement.  (Plea 3L 20 - 3L1. FRCrP
11(b)(1)(A)).  Then the Magistrate Judge asked questions relative to
TREANTON's capabilities to make good decisions (FRCrP 11(b)(1)
"determine that the defendant understands").

TREANTON reports he takes medication for mental health, and that
he is of sound mind today.  Plea 17L19 - 8L17.  TREANTON denied being
under the influence of any substances. (Plea 6L13-17.) Defense counsel was
not aware of any reason TREANTON may "not be competent to enter a
guilty plea." (8L22 - 9L1.)

The Court discussed with TREANTON his rights of defense, denial,
confrontation, presumption, and subpoena, among his other trial rights.
This started with Magistrate Judge describing to TREANTON his rights to
counsel, and confirming,  "You have the right to have a lawyer help and
represent you during every stage of this case".  (Plea Tr. 10L3-14.)  The
Magistrate Judge also confirmed TREANTON was "generally satisfied with

the advice, services, and representation you received from your attorney in this case?" (Plea 10L15-17), FRCrP 11(b)(1)(D). This included defense counsel being appointed at "public expense" [Plea 10L3-14] through trial, if necessary, see above. FRCrP 11(b)(1)(D).

The Magistrate Judge then talked "about your trial rights". This included "a speedy and public trial before a jury of 12 people selected from a cross section * * *". FRCrP 11(b)(1)(C). This included a "unanimous" verdict, with it being based only on what is submitted into evidence at trial and on the instructions given to them by Judge Rose (Plea 11L1 - 12.) This also included the "presumption of innocence". (Plea 11L13-21.)

The Court discussed "the right to confrontation", including an explanation of "confrontation". (Plea 11L22 - 12L6.) There was also a right to "present a defense", including the power of subpoena, at no cost to TREANTON. (Plea 12L7 - 18.) There was also a discussion of TREANTON's right to remain silent, and the jury instruction to further protect that right. (Plea 12L19 - 13L2.) All FRCrP 11(b)(1)(E).

This portion of the colloquy ended with "Do you understand that by pleading guilty you are giving up your right to a jury trial." (Plea 13L3 - 9.) FRCrP 11(b)(1)(F).

11

The Court discussed the "nature of the charge". FRCrP 11(c)(1). Regarding Count 1 (Production of Child Pornography) The Court listed the five "things": "First, on the dates -- on or about the dates alleged in the indictment, the victim was under the age of 18. Second, you knowingly used the victim to engage in sexually explicit conduct. Third, you acted with the purpose of producing a visual depiction of such sexually explicit conduct. Fourth, that visual depiction that you produced used materials that had been mailed, shipped or transported across state lines by foreign commerce by any means, including by computer or cellphone. Five, some or all this occurred in the Southern District of Iowa." (Plea 20L19 - 21L3).

Count 4, Possession of Child Pornography "to convict you of that offense, the Government would be required to prove beyond a reasonable doubt four things. First, that you knowingly possessed one or more films, videotapes or other matters containing a visual depiction. Second, that the visual depiction had been shipped or transported in interstate or foreign commerce by they [sic] means, including by a computer or a cell phone. Third, the visual depiction involved a minor engaging in sexually explicit conduct; and four, some or all conduct occurred in the Southern District of Iowa." Plea 21L4-14.

Appellate Case: 22-1476    Page: 12    Date Filed: 05/16/2022 Entry ID: 5157748

There are no challenges to the Plea process or other compliance of Rule 11 requirements.   No post-plea motion(s) were filed.

The Court also confirmed the discovery material independently supported the elements.  (Plea 28L4-10.) Defense counsel was not aware of any other defense.  (Plea 28L11-20.)

The Court addressed any maximum penalty(H), any mandatory minimum penalty(I[2]), forfeiture (J) and restitution (K), and special assessment.  FRCrP 11(b)(1) (H)(I)(J)(K)(L).  This included the risk of consecutive sentencing on Counts 1 and 4.  See, generally Plea 13L10 - 15L18.

The Court discussed the Guideline calculation the sentencing judge "must consider this range"and its "Advisory" status.  This included reference the power to depart from the advisory Guideline range based on the factors * * * or [the sentencing judge] can vary from the range based on the factors listed * * * you can receive a sentence below or above the advisory Guideline range.  In fact, you could receive a sentence all the way up to the maximum statutory sentences - consecutively. (Plea 15L19 - 16L20.) FRCrP 11(b)(1)(M).

---

[2]No statutory mandatory minimum penalty.  Fed.R. Cr. P. 11(1)(E).

13

TREANTON was warned there is no parole in the Federal prison system, and would not be eligible for any early release, excepting any "good time you may earn". TREANTON was warned of "a term of supervised release", and the consequences of any violation. (Plea 17L2 - 18L21.) FRCrP 11(b)(1)(H). TREANTON was advised of the need to be on the Sex Offender Registry. (Plea 19L1 - 6.) He was advised of the heightened fine(s)/Assessments under the Crime Victim's Rights Act. (Plea 19L7 - 20L5. )

TREANTON was provided a summary of the Pre-Sentence Investigation process, the rights at Sentencing, and the rights of appeal. (Plea 28L21 - 32L4.) Again the right to appeal the Motion to Suppress was preserved within the Plea documentation. See, Plea Agreement, page 13-14, ¶28.

TREANTON was asked if anyone was forcing or pressured TREANTON to plead guilty or made promises in order to have him plead guilty today and defense counsel was asked "do you believe a guilty plea in this case would be voluntary". In both cases the Court was satisfied any Plea was voluntary and did not result from force, threats, or promises. See, generally, Plea Tr. 32l5 - 12. FRCrP 11(b)(2).

14

Again, there were no post-plea motions challenging the Plea. The Plea Report and Recommendation (R. Doc. 55) was filed the day of the Plea. It was accepted by the Sentencing Judge on November 29, 2021. R. Doc. 57.

SENTENCING

Sentencing was February 28, 2022 before (now Chief) Judge Stephanie Rose. There were some discussion of the Government's request to have some testimony. The Court denied the Government's request. See, generally, Sentencing Transcript 6L21 - 8L10. (hereafter Sentencing Page and Line). There were no factual errors in the presentence report. (Sent. 2L21-25.)

*"[H]aving considered all of the factors here, I do impose a sentence of 360 months on Count 1, 240 months on Count 2, with those sentences to run consecutively to one another, for a total sentence of 600 months' imprisonment. [¶] I know that there's a lot of analysis going on right now in the guidelines and in the child pornography guidelines in particular, but these are not adjustments that we see in every case. We don't see obstruction in every case. We don't see a parent abusing their child in every case. We don't see torture in every case. He is well outside the norm. [¶] It's rare that we have that five-level increase for repetitive sexual*

15

*conduct. To get to a 53 capped at a 43, highly, highly unusual. And so even if I were ignoring the guideline analysis here, I would have varied to the statutory maximums in this case because of the serious nature of what happened.* " Judge's statement italicized, Sentencing 17L23 - 18L13.

<u>Disposition of the case in the Trial court</u>: The Trial Court sentenced TREANTON to the maximum sentences, consecutive, for a total of 600 months. The other counts were dismissed, as pursuant to the Plea Agreement.  Judgment/Committment, R. Doc. 74.

<u>Statement of Facts:</u> As set forth within the Indictment and Plea Transcript, TREANTON admitted to both Child Pornography production, and Child Pornography possession. The "production" included his daughter, now deceased, as the victim.  The "possession" had at least one male image. There are/were detailed admissions within the Plea documentation and stipulated facts.  Plea Agreement, R. Doc. 53.

SUMMARY OF THE ARGUMENT:

TREANTON's Motion to Suppress (R. Doc. 33) should have been granted, as the evidence shows he would believe he was in custody.  His Sentence was unreasonable, under the totality of 3553(a) factors and the Sentence should be corrected or the case remanded for new Sentencing.

16

DIVISION I. TREANTON'S MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED AS THE EVIDENCE SHOWS TREANTON BELIEVED HE WAS "IN CUSTODY".

Applicable Standard of Review - Guideline: The appellate Court reviews the denial of a motion to suppress de novo but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials. *United States v. Tamayo-Baez*, 820 F.3d 308, 312 (8th Cir. 2016). The appellate court may affirm the district court's Fourth Amendment decision on any basis supported by the record. *United States v. Harris*, 747 F.3d 1013, 1016 n.3 (8th Cir. 2014).

TREANTON asserts his right to appeal from the Suppression hearing was preserved within the Plea Agreement. See ¶28, page 13-14, R. Doc. 53.

TREANTON first argues the officers violated his Miranda rights while questioning him. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "The Fifth Amendment requires that Miranda warnings be given when a person is interrogated by law enforcement after being taken into custody." *United States v. Parker*, 993 F.3d 595, 601 (8th Cir. 2021) (quoting *United States v. Giboney*, 863 F.3d 1022, 1027 (8th Cir. 2017)). Here, the government

concedes that none of the officers advised TREANTON of his Miranda rights. Thus, the issue is whether TREANTON was in custody during the interrogation.

Prior to a custodial interrogation a suspect must be advised: (1) that he has a right to remain silent, (2) that anything he might say may be used in evidence against him, (3) that he has a right to the presence of an attorney, and (4) that if he cannot afford counsel he may have counsel appointed. *Miranda*, 384 U.S. at 444, 471. Importantly, "[s]eizure is a necessary prerequisite to *Miranda*." *United States v. Parker*, 993 F.3d 595, 601 (8th Cir. 2021) (citation omitted). To that point, "[n]ot all interactions between law enforcement officers and citizens amount to seizures." *United States v. Cook*, 842 F.3d 597, 600 (8th Cir. 2016). The inquiry into whether an interaction between law enforcement and a citizen is a custodial interrogation is an objective one. See *Stansbury v. California*, 511 U.S. 318, 323 (1994) (determining if a suspect is in custody is based on the objective circumstances of the interrogation, not on subjective views by either law enforcement or the suspect).

A person is considered to be in custody for the purposes of *Miranda* warnings when there is a "formal arrest or restraint [on his or her] freedom

Appellate Case: 22-1476    Page: 18    Date Filed: 05/16/2022 Entry ID: 5157748

of movement of the degree associated with formal arrest." *United States v. Williams*, 760 F.3d 811, 814 (8th Cir. 2014). "To determine whether a suspect was in custody, we ask whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave." *United States v. Laurita*, 821 F.3d 1020, 1024 (8th Cir. 2016). This court considers six non-exhaustive factors when making this determination:

(1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest;

(2) whether the suspect possessed unrestrained freedom of movement during questioning;

(3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;

(4) whether strong arm tactics or deceptive stratagems were employed during questioning;

(5) whether the atmosphere of the questioning was police dominated; or,

Appellate Case: 22-1476    Page: 19    Date Filed: 05/16/2022 Entry ID: 5157748

(6) whether the suspect was placed under arrest at the termination of questioning. *United States v. Ferguson*, 970 F.3d 895, 901 (8th Cir. 2020) (quoting *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)).

"The 'ultimate question in determining whether a person is in "custody" for purposes of *Miranda* is whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.'" *United States v. Williams*, 760 F.3d 811, 814 (8th Cir. 2014). The core of the inquiry into whether a suspect is in custody is "whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave." *United States v. Laurita*, 821 F.3d 1020, 1024 (8th Cir. 2016); *United States v. Perez-Sosa*, 164 F.3d 1082, 1084 (8th Cir. 1998) ("A consensual encounter becomes a seizure when a reasonable person in the same circumstances would not feel free to leave.")  An interaction between law enforcement and a suspect can also begin as a consensual encounter but be rendered unlawful by the length and manner of the continued detention. See *United States v. Maltais*, 403 F.3d 550, 557 n.5 (8th Cir. 2005) (collecting cases finding detentions unlawful based on their circumstances and length).

Appellate Case: 22-1476     Page: 20     Date Filed: 05/16/2022 Entry ID: 5157748

Evidence obtained in violation of the United States Constitution is subject to the exclusionary rule, in both state and federal court. See *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); *Weeks v. United States*, 232 U.S. 383, 398 (1914). Failure to provide *Miranda* warnings during a custodial interrogation violates a criminal defendant's Fifth Amendment privilege against self-incrimination and statements given during the interrogation are inadmissible against the defendant. *Miranda*, 384 U.S. at 492. The same goes for a warrantless search without a judicially recognized exception—such as voluntary consent—which violates a criminal defendant's Fourth Amendment right to be free from unreasonable searches and seizures. See *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011) ("Evidence obtained in violation of the Fourth Amendment . . . 'cannot be used in a criminal proceeding against the victim of the illegal search and seizure.'").

TREANTON asserts this Court should review the evidence and independently determine this was a custodial interrogation. While there were times when Law Enforcement said the "magic words" to appease the generic standards, there were similar incidents wherein it was clear the "magic words" were not enough.

Appellate Case: 22-1476     Page: 21     Date Filed: 05/16/2022 Entry ID: 5157748

It starts with TREANTON being found by many law enforcement inside a excessively cluttered[3] "detached garage[4]".  There was a front "overhead[5]" door and a "man[6]" door on the opposite side of the garage. DEA Task Force Officer[7] Carter opened the overhead door[8] and saw TREANTON climbing over the debris - headed the direction of the "man" door.  Carter opined that TREANTON was not making any progress towards the "man" door, nor returning to Carter - though Carter instructed him to do so.  Suppression 13L17-22.  At least one other officer recalled TREANTON "wasn't moving".  Hopkins Suppression 43L 14.  Officer Hopkins stated, I heard people -- or, excuse me, the officers, agents, for lack of a better term, barking orders inside.   It sounded like they were yelling loudly at someone, and it sounded to me like they were giving commands -- typical commands of, "Come to the door," "Show us your hands," things like that, to the best of my recollection."  Hopkins, Suppression 43L18-23.

---

[3]"* * * a lot of clutter".  McVey, Suppression 71L13.

[4]Suppression 9L23.

[5]Suppression 10L20.

[6]Suppression 10L24.

[7]Suppression 6L15-16.

[8]Suppression 11L7-8, 12L3-5.

22

Carter says he was giving TREANTON unsuccessful commands to stop resisting, so Carter struck TREANTON "one time". Suppression 14L10-21, 15L20. That was after Carter "directed him to the ground" "with some force." "We're taking a full-grown man from on top of a four- to five-foot pile and taking him to the ground, and - - the minimal force required was used. Hopkins, Suppression 47L15-20. Carter knew the officers at the "man" door were also giving "commands" to TREANTON. Suppression 20L 22.

At least in the beginning TREANTON was placed in handcuffs[9]. Suppression 15L25 - 16L1. While TREANTON was still handcuffed Carter could not explain the injuries on TREANTON's face. Suppression 17L9 - 13. "I don't know if it was from when I initially placed him on the ground on the ice or if it was from the strike that I delivered." Carter, Suppression 17L22-24. The photograph did not show all the blood from TREANTON. Carter, Suppression 18L7-10. Another officer stated "There was an abrasion on Mr. Treanton's nose and maybe a drop of blood on his mouth, maybe his lower lip." Officer Hopkins, Suppression 41L14-15. TREANTON was quoted as

---

[9]In the back. McVey, Suppression 74L9-11.

Appellate Case: 22-1476    Page: 23    Date Filed: 05/16/2022 Entry ID: 5157748

saying something like "He beat the  -  "He kicked the shit out of me," or something like that."  McVey, Suppression, 74L19-22.

Carter agreed TREANTON could have been arrested merely for his resisting or not "cooperating".  Suppression 19L22 - 20L6.

Other factors support the reality that TREANTON was in custody. The second officer assisting Carter in gaining control of TREANTON stated "we were able to **place him in custody -- or, excuse me, in handcuffs**, I mean."  Bold added, Officer Hopkins statement, Suppression 40L16-17.

Similarly there was a significant disappointment after instructions to arrest came from a State prosecutor.   It was the intentional plan during the pre-arrest briefing "we were not going to be arresting a suspect."  Hopkins, Suppression 57L23. When Hopkins sees TREANTON with another agent (Special Agent Allen) handcuffs were on TREANTON.  McVey, Suppression 59L8-15.  McVey was irritated as TREANTON was in handcuffs, Special Agent Allen "tells him he's not under arrest * * *."  McVey, Suppression, 60L7-13.  "* * * he didn't escort him" to the passenger door[10], only "walked partway to the passenger side with him."  McVey, Suppression 61L6-13. The recording started before he entered the vehicle.  TREANTON was in the

_____

[10]of one of the police vehicles, to do the interview.  McVey, Suppression 60L12-16.

Appellate Case: 22-1476     Page: 24     Date Filed: 05/16/2022 Entry ID: 5157748

front passenger seat. One agent was in the driver's seat, another in the back seat. McVey, Suppression 63L3-8.

During this "interview" there were times where the agents left TREANTON in the vehicle by himself, so they could "interact". McVey, Suppression 63L11-18. One of the times was when a State County Attorney instructed that TREANTON be arrested for State charges. (McVey, Suppression, 65L6-8). This was contrary to the agent's initial plans "that there were not to be arrests made * * *." McVey, Suppression 65L9-12. McVey told Special Agent Allen the instructions were to arrest TREANTON on State charges. "[h]e was clearly upset with that conversation." [t]he purpose of your investigation was for federal charges * * *. McVey, Suppression 66L15-25. It was made clear at the briefing not to arrest TREANTON. McVey does not believe Detective Carter, the one who struck and handcuffed TREANTON, was at the staffing. McVey, Suppression 73L3-20.

While TREANTON was in the vehicle there were multiple, other, officers at the scene and multiple vehicles. See, generally, McVey, Suppression 76L7 - 77L24. By the time of the encounter between TREANTON and law enforcement there was already an investigation where

25

"An offense had happened, yes[11]".  There was probable cause to arrest. Allen, Suppression 94L13-14. Allen did not take the handcuffs off until TREANTON had been walked to McVey's vehicle.  Allen, Suppression 95L1-7.  This was "[A]bout a minute."  Allen, Suppression, 96L18-21.

There are two problems here. The first was the intentional "briefing" decision NOT to arrest TREANTON.  It can be easily assumed that, in that fashion, non *Mirandized* inculpatory statements by TREANTON could be intentionally used against TREANTON.  However this was a failed tactic by the Federal investigators.

This is because what looks like a duck, sounds like a duck, and walks like a duck is likely a duck, regardless of what it is called. Using the standards within *Ferguson* TREATON was told his presence and answering questions was voluntary.  However he did not possess unrestrained freedom of movement during questioning. TREANTON likely knew he committed one, or multiple criminal activities, including resisting - which each could be an independent basis for arrest.  TREANTON was handcuffed, behind his back and walked to the vehicle before the handcuffs were removed.  The other strong arm tactics by the police were TREANTON was struck by law

_____

[11]Almost immediately changed to "something had happened, yes." Allen, Suppression 99L7-10.

26

enforcement, and was injured in his facial area. The atmosphere of the questioning was police dominated. While he was in the police vehicle, after being assaulted and handcuffed, there was one officer in the front seat, and another in the rear seat. There were multiple other officers, and vehicles, at the scene.

The tactic of intentionally NOT wanting to arrest TREANTON, but being told the County Attorney was instructing TREANTON be arrested made Special Agent Allen "clearly upset with that conversation." McVey, Suppression, 66L15-25. While Allen, and McVey, tried desperately to convince TREANTON it was the intent NOT to arrest him, the actions here speak louder than words. Using the *Ferguson* standards TREANTON did not possess unrestrained freedom. The recording started before he was walked to the police vehicle, and the handcuffs were not removed from behind his back until he was close to the vehicle. TREANTON was only contacted, when officers approached both sides of the garage where he was located, and both sets were giving TREANTON instructions to comply. Again, when TREANTON did not respond in a quick enough fashion, he was struck and considered to be resisting.

27

The determination of whether TREANTON was in custody is based on the objective circumstances of the interrogation. *Stansbury v. California*, 511 U.S. at 323 (1994). As a "reasonable person" TREANTON knew, under the totality of circumstances, that he would NOT have felt at liberty to terminate the interrogation and leave.

Out of the six *Ferguson* criteria the only standard which indicates TREANTON was free to go was the lip service given by the officers, over, and over, again. To TREANTON he was in a custodial situation and the statements made should be suppressed.

DIVISION II. THE SENTENCING COURT ABUSED ITS DISCRETION IN SENTENCING TREANTON WITH A SENTENCE BEYOND A SENTENCE "NOT GREATER THAN NECESSARY".

<u>Applicable Standard of Review - Guideline</u>: The appellate Court reviews the sentence imposed for reasonableness, first "ensur[ing] that the district court committed no significant procedural error." *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007); see also *United States v. Whiting*, 522 F.3d 845, 849 (8th Cir. 2008). If the district court's decision is "procedurally sound," the appellate court will review the sentence for substantive reasonableness under an abuse of discretion

Appellate Case: 22-1476    Page: 28    Date Filed: 05/16/2022 Entry ID: 5157748

standard. *Gall*, 128 S.Ct. at 597; *Whiting*, 522 F.3d at 849. The appellate

Court may apply a presumption of reasonableness to a sentence within the

properly calculated guideline range but are not required to do so. See *Rita v.*

*United States*, 551 U.S. 338, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007);

*Gall*, 128 S.Ct. at 597; *Whiting*, 522 F.3d at 849.

Counsel notes that the Suppression Ruling was specifically preserved

as an appellate issue within the Plea Agreement, ¶28, Page 13-14 (R. Doc.

53), TREANTON asserts he likewise "preserve[d] the right to appeal any

sentence imposed by the Court, to the extent that an appeal is authorized by

law * * *." Plea Agreement, ¶28, Page 13, R. Doc. 52.

Enhancements are reviewed on a "clearly erroneous findings"

standard. *United States v. Atkins*, 250 F.3d 1203, 1213 (8th Cir. 2001).

In imposing a sentence under 18 U.S.C. § 3553(a), a sentencing court

abuses its discretion if "it fails to consider a relevant factor that should have

received significant weight, gives significant weight to an improper or

irrelevant factor, or considers only the appropriate factors but commits a

clear error of judgment in weighing those factors." *United States v. Watson*,

480 F.3d 1175, 1177 (8th Cir.2007). A district court need not recite all of the

factors on the record, and it is not required to make a specific rejoinder to

each argument advanced by the defendant. *United States v. Barron*, 557F.3d 866 (8th Cir. 2009).

The appellate court will review the record and determine whether the District Court was aware of its authority to vary downward and understood the pending argument for a reduction based on variance. That being said, the appellate court will not review the District Court's decision *not* to grant a request for downward variance, so long as the District Court was aware of the authority to do so, or the District Court had an unconstitutional motive for denying the variance. *United States v. Orozco-Rodriguez,* 220 F.3d 940, 942 (8th Cir. 2000), *United States v. Phelps*, 536 F. 3d 862, 868 (8th Cir. 2008) (constitutional language).

A sentence falling within a properly calculated Guidelines range is entitled to a presumption of reasonableness. *United States v. Powills*, 537 F.3d 947, 951 (8th Cir. 2008). Under the Sentencing Guidelines, the government must prove the scope of enhancements attributed to a defendant by a preponderance of the evidence. *United States v. Maggard*, 156 F.3d at 843, 847-48 (8th Cir. 1998) (citing *United States v. Padilla-Pena*, 129 F.3d 457, 467 (8th Cir.1997)); *United States v. Candie*, 974 F.2d 61, 64 (8th Cir.1992) (- mainly dealing with drug weight). Additionally, the district

30

court is required to make findings of fact and rule on unresolved objections to the presentence investigation report, which the district court did in this matter. *Candie*, 974 F.2d at 64. Finally, a "court may rely solely upon a presentence report for findings relevant to sentencing only if the facts in the presentence report are not disputed by the defendant." *United States v. Hammer*, 3 F.3d 266, 271 (8th Cir.1993) (internal citations omitted).

Argument:  TREANTON urges the Sentencing Court should have ordered a sentence for a shorter period of time.   Here the Court Sentenced TREANTON to the maximum sentence on each of the two counts, and imposed consecutive sentences - such that the total sentence is 50 years (600 months).   See Judgment/Commitment, R. Doc. 74.

TREANTON urges the abuse of discretion occurred when the Court failed to consider the totality of the sentence as imposed, this included NOT providing TREANTON any sentence reduction for Acceptance of Responsibility - to determine a sentence "not greater than necessary" [18 U.S.C. §3553(a)] in determing a punishment to fit the Defendant, not merely the offense.  *Williams v. New York*, 337 U.S. 241 (1949).  This is especially in light of TREANTON's unique factors, as argued below.

Appellate Case: 22-1476     Page: 31     Date Filed: 05/16/2022 Entry ID: 5157748

The main argument here is the differential between TREANTON's belief if the Sentencing Court would have given the appropriate weight to TREANTON's family circumstances, including his mental health concerns, and his desire to have his "acceptance of responsibility" rewarded by something less than the maximum sentence, consecutive. The Court could have easily varied downward regarding a sentence "not greater than necessary" - especially in light of TREANTON's "acceptance".

CONCLUSION:

This Court should grant TREANTON'S appeal and the matter should be remanded so TREANTON can pursue a defense after the Suppression is granted, or otherwise remand so TREANTON can receive recognition, and reward, for his "acceptance" and receive a more lessor Sentence consistent with his other arguments.

JUSTIN TREANTON By,
**/s/ Jack E. Dusthimer**
Jack E. Dusthimer Iowa Bar #0002193
1503 Brady Street
Davenport Iowa 52803-4622
563.323.8344 PHONE 563.323.7452 FAX

Appellate Case: 22-1476     Page: 32     Date Filed: 05/16/2022 Entry ID: 5157748

## CERTIFICATE OF FILING

I, Jack E. Dusthimer, hereby certify that on May 12, 2022 I filed, via ECF for approval and subsequent mailing of this Brief (10 copies) to the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by means of regular U.S. Mail, postage prepaid to the address noted below:

UNITED STATES COURT OF APPEALS
EIGHTH CIRCUIT, ATTN CLERK
THOMAS F. EAGLETON COURTHOUSE
111 S 10TH STREET
ROOM 24.329
ST. LOUIS, MO, 63102

all as pursuant to F.R.A.P. 25(a)(2)(b), and 8th Cir.R. 28A.

**/s/ Jack E. Dusthimer**
JACK E. DUSTHIMER

## CERTIFICATE OF SERVICE

I, Jack E. Dusthimer, I certify that upon approval from the Clerk of Court I will otherwise provided a copy of the Brief/Addendum by means of regular U.S. Mail, postage prepaid to:

ASSISTANT UNITED STATES ATTORNEY
UNITED STATES ATTORNEY - IOWA
U.S. COURTHOUSE, SUITE 310
DAVENPORT IA 52801

JUSTIN TREANTON #19469-030
HAZELTON USP
U.S. PENITENTIARY
P O BOX 2000
BRUCETON MILLS WV 26425
ATTY CLIENT PRIVILEGED MAIL

**/s/ Jack E. Dusthimer**
Jack E. Dusthimer

Appellate Case: 22-1476    Page: 33    Date Filed: 05/16/2022 Entry ID: 5157748

CERTIFICATE OF COMPLIANCE

I, Jack E. Dusthimer, hereby certify that this brief complies with the type-volume limitation. I hereby further certify that I used Corel Word Perfect 2021, Georgia Linotype proportionally spaced face, 14-point size, in preparation of this document, and that this brief, in the manner consistent with the Rules, has 6,329 words (plus or minus 100 words for final editing) in the brief INCLUDING ANY EXEMPT PORTIONS, BUT NOT INCLUDING THE ADDENDUM(S) OR ATTACHED SPREADSHEET, all as pursuant to F.R.A.P. 32(a)(7)(C) & 8th. Cir.R. 28A(c) and as shown under the File, Properties in the menu program.

**/s/ Jack E. Dusthimer**
Jack E. Dusthimer

ADDENDUM:

As pursuant to 8th Cir. R. 28A(b) the following is a copy of the (i) District Court Opinion or Order including supporting memoranda or findings; (ii) any magistrate's report and recommendation that preceded the district court opinion or order; (iii) short excerpts from the record, other than from the transcript of testimony, that would be helpful in reading the brief; and (iv) other relevant rulings of the district court.

Magistrate's Report and Recommendation November 15, 2021
District Court Order adopting and denying the Report and
    Recommendation November 29, 2021
Suppression Ruling (written) June 28, 2021
Judgment and Commitment February 28, 2022

Appellate Case: 22-1476   Page: 34   Date Filed: 05/16/2022 Entry ID: 5157748