# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

22-1476
CRIMINAL

---

## UNITED STATES OF AMERICA,
Appellee,

v.

## JUSTIN TREANTON,
Appellant.

---

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE*
*SOUTHERN DISTRICT OF IOWA*
*HONORABLE STEPHANIE M. ROSE, CHIEF U.S. DISTRICT COURT JUDGE*

---

## BRIEF OF APPELLEE

---

**Richard D. Westphal**
*United States Attorney*

**Andrea L. Glasgow**
*Assistant United States Attorney*

U.S. Courthouse, Suite 310
131 East 4th Street
Davenport, Iowa 52801
Tel: (563) 449-5432

Attorneys for Appellee

## SUMMARY OF THE CASE

Justin Treanton appeals the district court's denial of his motion to suppress, claiming that the district court erred when it found that he was not in custody at the time of questioning by law enforcement. But in view of the factors employed by this Court's precedent, it is clear that the district court's denial of Treanton's motion to suppress was well-supported by the record.

Treanton also claims the district court abused its discretion in sentencing him to a 600-month guidelines sentence. Given Treanton's egregious conduct involving the production and possession of child pornography, along with his violent criminal history, there was no abuse of discretion. This Court should affirm.

## STATEMENT REGARDING ORAL ARGUMENT

This case has been screened for argument. The United States suggests that ten minutes per party would be adequate for a full discussion of the issues.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE ................................................................. i

STATEMENT REGARDING ORAL ARGUMENT .................................... i

TABLE OF CONTENTS .................................................................. ii

TABLE OF AUTHORITIES ............................................................. iii

STATEMENT OF THE ISSUES......................................................... 1

STATEMENT OF THE CASE
    A.   Procedural history ................................................. 1
    B.   Facts................................................................... 4

SUMMARY OF THE ARGUMENT ..................................................... 6

ARGUMENT

I.   The district court correctly denied Treanton's motion to suppress.
    A.   Standard of review ................................................. 7
    B.   Argument............................................................. 8

II.   The district court did not abuse its discretion in sentencing Treanton to a within-guidelines sentence.
    A.   Standard of review ............................................... 15
    B.   Argument........................................................... 16

CONCLUSION ........................................................................... 19

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ........................ 20

CERTIFICATE OF SUBMISSION AND VIRUS SCAN ........................ 21

CERTIFICATE OF SERVICE........................................................... 22

Appellate Case: 22-1476    Page: 3    Date Filed: 07/08/2022 Entry ID: 5175439

# TABLE OF AUTHORITIES

**CASES:**

*Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564 (1985) ............. 7, 8

*Gall v. United States*, 552 U.S. 38 (2007) ................................................. 16

*Howes v. Fields*, 565 U.S. 499 (2012) .................................................... 8, 9

*Maryland v. Shatzer*, 559 U.S. 98 (2010) ................................................. 9

*Miranda v. Arizona*, 384 U.S. 436 (1966) ................................................ 8

*United States v. Axsom*, 289 F.3d 496 (8th Cir. 2002) ...................... 13, 14

*United States v. Czicray*, 378 F.3d 822 (8th Cir. 2004) .................... 10, 11

*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009) ...................... 16

*United States v. Giboney*, 863 F.3d 1022 (8th Cir. 2017) ................. 11, 15

*United States v. Gunnell*, 775 F.3d 1079 (8th Cir. 2015) ........................ 7

*United States v. Laurita*, 821 F.3d 1020 (8th Cir. 2016) ....................... 10

*United States v. Laws*, 819 F.3d 388 (8th Cir. 2016) ............................. 13

*United States v. Long*, 797 F.3d 558 (8th Cir. 2015) ............................... 7

*United States v. Rodriguez*, 711 F.3d 928 (8th Cir. 2013) ..................... 12

*United States v. Thorne*, 896 F.3d 861 (8th Cir. 2018) .......................... 16

*United States v. U.S. Gypsum Co.,* 333 U.S. 364 (1948) .......................... 7

Appellate Case: 22-1476    Page: 4    Date Filed: 07/08/2022 Entry ID: 5175439

# STATEMENT OF THE ISSUES

**I.** **Whether the district court correctly denied Treanton's motion to suppress.**
   1. *United States v. Long*, 797 F.3d 558 (8th Cir. 2015)
   2. *United States v. Gunnell*, 775 F.3d 1079 (8th Cir. 2015)
   3. *United States v. Laurita*, 821 F.3d 1020 (8th Cir. 2016)
   4. *United States v. Rodriguez*, 711 F.3d 928 (8th Cir. 2013)

**II.** **Whether the district court abused its discretion in sentencing Treanton to a within-guidelines sentence.**
   1. *United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009)
   2. *Gall v. United States*, 552 U.S. 38 (2007)
   3. *United States v. Thorne*, 896 F.3d 861 (8th Cir. 2018)

# STATEMENT OF THE CASE

## *A.  Procedural history*

The grand jury charged Treanton with Count 1: Production of Child Pornography; Count 2: Production of Child Pornography; Count 3: Receiving and Distributing Child Pornography; and, Count 4: Possession of Child Pornography. (R. Doc. 2.)[1] Treanton moved to suppress his

---

[1] This brief uses the following abbreviations:
"R. Doc." -- district court clerk's record, followed by docket entry and page number, where noted;
"Supp. Tr" -- Treanton's suppression hearing transcript, followed by the page number;
"ST" -- Treanton's sentencing transcript, followed by page number; and,
"Br." --Treanton's brief, followed by page number.

Appellate Case: 22-1476    Page: 5    Date Filed: 07/08/2022 Entry ID: 5175439

statements made to the police, and related evidence, claiming that he was in police custody at the time of the statements and that the statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). (R. Doc. 33, 33-1.) The government resisted (R. Doc. 34) and an evidentiary hearing was held on the motion (*see* R. Doc. 39). The district court found no violation of Treanton's constitutional rights stating that Treanton "was told on multiple occasions that he did not need to answer questions, could leave if he so desired, and was not under arrest. [Treanton] intereacted with agents in a friendly manner, engaging in small talk and volunteering information even when not asked." (R. Doc. 42, at 7.)

Treanton then pled guilty to Counts 1 and 4 of the Indictment, pursuant to a conditional plea agreement, which allowed him to preserve his right to appeal the denial of his motion to suppress. (R. Doc. 53.) As a part of the plea agreement, the government agreed to dismiss Counts 2 and 3 at the time of sentencing, with Treanton acknowledging that the underlying conduct would be considered at the time of sentencing. (R. Doc. 53, at 1.)

2

On February 28, 2022, Treanton was sentenced to 600 months of imprisonment. (R. Doc. 74.) At sentencing Treanton's unobjected to total offense level was 53; however, "because the guidelines cap out at a 43, that base offense level become[] 43." (ST 5-6.) Treanton was found to be a criminal history category of V, which would ordinarily suggest a term of imprisonment of life; however, because of the statutory maximum penalties, the range "effectively became[] 600 months' imprisonment." (ST 6.) In handing down a guidelines sentence of 600 months', the court noted that "[i]n order to give him some chance at acceptance of responsibly, I would have to give an enormous reduction because, frankly, he is off the charts in the guideline analysis here, and I'm not comfortable doing that. I don't think that he's somebody who should do any less here than the statutory maximum that I can give to him. I think he's an extreme danger to the community." (ST 17.)

On March 7, 2022, Treanton filed a timely notice of appeal. (R. Doc. 77, 78.)

3

## B. Facts

Treanton was located in a garage in Bettendorf, Iowa, when law enforcement was attempting to execute a search warrant for child pornography on Treanton's cell phone. (Supp. Tr. 53-58; R. Doc. 41-2.) Treanton was observed climbing over piles of debris in the garage by two groups of agents, coming from separate directions. (Supp. Tr. 13, 37-38.) Agents observed Treanton to be holding a large flashlight in his hand. (Supp. Tr. 14-15, 38.) Treanton eventually was pulled down to the ground, which was covered with ice, by a deputy sheriff. (Supp. Tr. 13-14, 38.) Treanton held his hands underneath his body and refused commands to display his hands. (Supp. Tr. 14-15, 39.) Given the agents' observations of the large flashlight, which they believed could be used as a weapon, and Treanton's refusal to provide his hands, a deputy struck Treanton one time in the face with a closed fist in an attempt to get him to release his hands. (Supp. Tr. 15, 39-40.) Treanton was handcuffed on the ground (Supp. Tr. 15-16, 40-41), but was then searched and when no weapons were found, agents stood him up, removed the handcuffs, and told Treanton he was not under arrest. (Supp. Tr. 59-60, 87.) An agent

4

then walked Treanton to a nearby vehicle and asked whether he was willing to be interviewed. (Supp. Tr. 87.) Treanton entered the vehicle on his own. (Supp. Tr. 88.)

Once in the vehicle, agents informed Treanton multiple times that he was not under arrest. (Supp. Tr. 60-61, 87; R. Doc. 41-1 (Exh. 1[2]).) Agents also told Treanton that he was free to go, and could decline to answer questions. (R. Doc. 41-1 (Exh. 1).) Treanton agreed to be interviewed and spoke with officers. (Supp. Tr. 60; R. Doc. 41-1 (Exh. 1).) At the end of the interview, officers were notified that the County Attorney's office had decided to charge Treanton with state offenses and that he should be arrested. (Supp. Tr. 65-67, 89-90) Treanton was then advised of his *Miranda* Rights, before being transported to jail. (R. Doc. 41-1 (Exh. 1).)

At the beginning of the evidentiary hearing, the parties agreed that the fighting issue was whether the manner in which Treanton was initially encountered colored everything else such that his statements

---

[2] Electronic suppression exhibit 1 is transmitted with this brief. (R. Doc. 41-1.)

should be suppressed. (Supp. Tr. 4-5.) The parties agreed with the premise that there were no *Miranda* warnings given, that Treanton was told he was free to go, that he was told he did not have to answer officers' questions, and that he was told those things on multiple occasions. (*Id*.) After considering the evidence and legal principles, the district court (Hon. Stephanie M. Rose, Chief Judge) concluded there was no constitutional violation. (R. Doc. 42, at 7.)

## SUMMARY OF THE ARGUMENT

The district court correctly concluded that Treanton was not in custody at the time of his police interview. Treanton was told he was not under arrest and that he was free to decline to answer questions on multiple occasions, and the tone of the interview was cordial and friendly. The fact that Treanton was ultimately placed under arrest at the conclusion of the interview is not dispositive. Applying the factors suggested by this Court's precedent, it is clear that the district court did not err in denying Treanton's motion to suppress.

Nor did the district court abuse its discretion in sentencing Treanton to a 600-month guidelines sentence, which is presumed

6

reasonable on appeal. The district court carefully weighed the Section 3553(a) factors, including those relating to Treanton's family background and mental health concerns. Given his egregious conduct involving the production and possession of child pornography, however, along with his violent criminal history, there was no abuse of discretion.

## ARGUMENT

## I. The district court correctly denied Treanton's motion to suppress.

### A. *Standard of review*

When reviewing a ruling on a motion to suppress, this Court reviews the district court's factual findings for clear error, and questions of constitutional law de novo. *United States v. Long*, 797 F.3d 558, 564 (8th Cir. 2015). This Court will affirm "unless the denial of the motion is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." *United States v. Gunnell,* 775 F.3d 1079, 1083 (8th Cir. 2015); *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 393-95 (1948); *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574 (1985). If the factfinder's account of the evidence "is plausible in light of the record

7

viewed in its entirety," this Court will not reverse even if it would have viewed the evidence differently had it been sitting as the trier of fact. *Anderson,* 470 U.S. at 574.

## B. Argument

Custody occurs when the defendant "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "Custody" in the context of *Miranda*, is a "term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, 565 U.S. 499, 508-09 (2012). The question is an objective one, of whether a "reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Id*. at 509 (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).). In deciding this question, courts must consider "all of the circumstances surrounding the interrogation." *Id*. "Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the

8

interviewee at the end of the questioning." *Id.* (internal citations omitted).

However, the question of whether there has been a restraint placed on a person's freedom of movement is not the end of the inquiry. *Id.* Because "[n]ot all restraints on freedom of movement amount to custody for the purposes of *Miranda*," if the court finds a restraint on the freedom of movement, the court must then turn to the question of "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* For example, the Supreme Court has held that the "temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody." *Maryland v. Shatzer*, 559 U.S. 98, 113 (2010) (internal citations omitted). Similarly, the Court has held that even those who are incarcerated are not necessarily in custody for the purposes of *Miranda. Id.*

This Court has specifically applied six, non-exclusive, factors to determine whether an individual was in custody for the purposes of *Miranda*:

9

(1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; and, (6) whether the suspect was placed under arrest at the termination of the questioning.

*United States v. Laurita*, 821 F.3d 1020, 1024 (8th Cir. 2016) (quoting *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)). However, the factors are "not exclusive, and custody cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." *Id.* (internal quotation omitted). Furthermore, "[t]here is no requirement . . . that the *Griffin* analysis be followed ritualistically in every *Miranda* case." *United States v. Czicray*, 378 F.3d 822, 827 (8th Cir. 2004). "The ultimate inquiry must always be whether the defendant was restrained as though he were under formal arrest." *Id.* at 828.

10

**(1) Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest.**

Here, the audio recording of the conversation in the vehicle clearly reflects that officers told Treanton numerous times that he was not under arrest. (*See* R. Doc. 41-1 (Exh. 1).) Additionally, the recording reflects that Treanton was told that if there were questions he did not want to answer that he did not have to and that he was free to go. (*Id.*)

The Eighth Circuit has held that this factor should not be treated "merely as one equal factor in a multi-factor balancing test." *Czichray*, 378 F.3d at 826. Rather, when "a person is told repeatedly that he is free to terminate an interview [that] is powerful evidence that a reasonable person would have understood that he was free to terminate the interview." *Id.* So powerful in fact, that there is no precedent either from the Eighth Circuit or the Supreme Court holding that a person was in custody after being "clearly advised of his freedom to leave or terminate questioning." *United States v. Giboney*, 863 F.3d 1022, 1028 (8th Cir. 2017) (quoting *Czichray*, 378 F.3d 822; *see also United States v. Perrin*,

11

659 F.3d 718, 721 (8th Cir. 2011) (stating that the Eighth Circuit has "never held that a person was in custody after receiving" admonitions from law enforcement that the person was free to leave.)).

### (2) Whether the suspect possessed unrestrained freedom of movement during questioning.

Treanton walked with an officer to an unmarked vehicle and was asked to participate in an interview. (Supp. Tr. 87.) Treanton was uncuffed[3] and walked, on his own, to the passenger side of the vehicle and got in. (Supp. Tr. 87-88.) During the interview, Treanton was not handcuffed, and his movements were not otherwise restricted. (*See* Supp. Tr. 90.)

### (3) Whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions.

In this case, upon speaking with Treanton in the vehicle, Treanton was cooperative with officers and freely volunteered information. (R. Doc. 41-1 (Exh. 1).) The nature of the conversation was informal and

---

[3] The Eighth Circuit has held that the use of handcuffs, particularly when there are concerns about officer safety, does not equate to custody. *See e.g.*, *United States v. Rodriquez*, 711 F.3d 928, 935 (8th Cir. 2013).

12

friendly. *See United States v. Axsom*, 289 F.3d 496, 502 (8th Cir. 2002) (finding that a suspect's conduct during the interview (being extremely friendly and cooperative) showed his voluntary acquiescence to the interview).

> **(4) Whether strong arm tactics or deceptive stratagems were employed during questioning.**

Here, the recording clearly demonstrates that there were no strong arm tactics or deceptive stratagems employed during the questioning. (R. Doc. 41-1 (Exh. 1).) Treanton's argument seemed to be that the encounter with law enforcement prior to the interview, and specifically that he was handcuffed for a period of time prior to the interview, tainted the interview; however, when a suspect is then specifically advised that they are free to leave, the fact of prior handcuffing does not make the entire interaction custodial. *United States v. Laws*, 819 F.3d 388, 397 (8th Cir. 2016) ("Nevertheless, we have held more than once that an 'explicit assertion that the defendant may end the encounter . . . . generally removes any custodial trappings from the questioning.'").

13

### (5) Whether the atmosphere of the questioning was police dominated.

Treanton was interviewed by two agents in a vehicle in front of the residence where he was found. (Supp. Tr. 89.) As a practical matter, this was the most convenient, readily available location, as the garage Treanton was found in was full of various piled up debris, and the homeowner said he was not even supposed to be there. (*See* Supp. Tr. 59.) Additionally, it was January 30, and the weather was cold, so an outdoor interview was also not practical. (*Id*.)

Treanton argues that because other agents were on scene, the interview was police dominated; however, the homeowner had given law enforcement consent to search her garage, and the fact of additional officers being on scene does not make the interview police dominated. *See Axsom*, 289 F.3d at 502 (disagreeing with the district court that the presence of nine agents in the suspect's small house established that the interview was conducted in a police dominated atmosphere).

The recording demonstrates that, as in *Axsom*, the questioning was a two-way street. (R. Doc. 41-1 (Exh. 1).) Although the agents asked questions of Treanton, Treanton also asked questions of the officers and

14

volunteered various statements. (*Id.*) The interview was cordial and informal and the mere presence of other officers does not make it custodial.

### (6) Whether the suspect was placed under arrest at the termination of the questioning.

Though agents did not intend to arrest Treanton, after the termination of the questioning (Supp. Tr. 65, 83), at the direction of the County Attorney, he was placed under arrest on state charges (Supp. Tr. 65). However, subsequent arrest, does not equate to custody. *See Giboney*, 863 F.3d at 1028.

Looking at the totality of the circumstances here, and specifically the recording of the interview, the interview was not custodial for the purposes of *Miranda* and the court correctly denied Treanton's motion to suppress.

## II. The district court did not abuse its discretion in sentencing Treanton to a guidelines sentence.

### A. *Standard of review*

This Court reviews the substantive reasonableness of a sentence under a deferential abuse of discretion standard taking into account the

15

totality of the circumstances and may apply a presumption of reasonableness to sentences within the guidelines range. *United States v. Feemster*, 572 F.3d 455, 460-61 (8th Cir. 2009) (*en banc*)*; Gall v. United States*, 552 U.S. 38, 51 (2007). "It will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *Feemster*, 572 F.3d at 464.

Where, as here, a defendant does not allege procedural error, this Court may proceed directly to review for substantive reasonableness. *United States v. Thorne*, 896 F.3d 861, 864 (8th Cir. 2018).

### B. Argument

Treanton argues that the district court abused its discretion by failing to reduce his sentence to account for acceptance of responsibility and failing to give appropriate weight to his "family circumstances, including mental health concerns." (Br. 31.)

At sentencing, the district court stated that it had "considered all of the factors under 3553(a) and the advisory guidelines and the statutory penalties." (ST 13.) The court then outlined Treanton's offense conduct—

16

including his distribution of "videos of himself sexually abusing his preschool-aged daughter," his "child pornography collection that featured additional children and focused heavily on infants and toddlers and showed a strong interest in bondage and in torture pornography that involved toddlers," and his attempts at obstructing justice. (ST 13-14.) The court discussed Treanton's history and characteristics, including his family history, health, substance abuse history, and educational background. (ST 14-15.) The court then discussed Treanton's "lengthy and violent" criminal history, which included convictions for "aggravated battery with a weapon, battery causing bodily harm, domestic abuse assault second, domestic abuse, two convictions for assault, a harassment, a child endangerment, another burglary conviction, an OWI, a possession of controlled substance, a possession of marijuana, disorderly conduct, criminal mischief, and public intoxication." (ST 15-16.)

The court specifically contemplated the issue of acceptance of responsibility saying "I work very hard when I sentence people to make sure that people get credit for acceptance of responsibility, but I don't

17

know how to do it here because, for one, this is perhaps one of the most dangerous people I've ever sentenced as far as his recidivist behaviors and as far as the severity of what he collected and what he did." (ST 17.) The court went on to point out that because Treanton's guidelines were so high that to give anything below the statutory maximum would amount to "an enormous reduction." (*Id*.) The court further explained that although there is some debate about some of the child pornography guidelines happening, the adjustments that Treanton received were not common enhancements (e.g. obstruction, a parent abusing their child, torture, and repetitive sexual conduct). (ST 18.) The court specifically explained that to have a person guideline at a level 53 is "highly, highly unusual." (*Id*.) The court explained that because of the aggravating circumstances present in Treanton's case, even if the court were to ignore the guidelines, it would have imposed the statutory maximums. (*Id*.)

Viewing the totality of the circumstances, and specifically the nature and circumstances of the offense and the history and characteristics of the defendant, the court did not abuse its discretion when it sentenced Treanton to a guidelines sentence.

## CONCLUSION

Treanton's conviction and sentence should be affirmed.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By: */s/ Andrea L. Glasgow*
Andrea L. Glasgow
Assistant United States Attorney

U.S. Courthouse, Suite 310
131 East 4th Street
Davenport, Iowa 52801
Tel: (563) 449-5432
Fax: (563) 449-5433

19

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 3402 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft 365 Word in Century Schoolbook font, 14 point.

Dated: July 8, 2022.

By: */s/ Andrea L. Glasgow*
Andrea L. Glasgow
Assistant United States Attorney

U.S. Courthouse, Suite 310
131 East 4th Street
Davenport, Iowa 52801
Tel: (563) 449-5432
Fax: (563) 449-5433

Appellate Case: 22-1476     Page: 24     Date Filed: 07/08/2022 Entry ID: 5175439

## CERTIFICATE OF SUBMISSION AND VIRUS SCAN

I hereby certify that on this 8th day of July 2022, I electronically submitted the BRIEF OF APPELLEE with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system after scanning it for viruses by using the McAfee Endpoint Security scan software program, which reported no viruses were found. Paper copies will be transmitted upon receipt of the Notice of Filing from the Clerk of Court.

*/s/ Dawn Thomas*
Paralegal Specialist

Appellate Case: 22-1476     Page: 25     Date Filed: 07/08/2022 Entry ID: 5175439

## CERTIFICATE OF SERVICE

I hereby certify that I did on this    day of July 2022, mail a true and

correct copy of the foregoing BRIEF OF APPELLEE by placing it in the

U. S. mail, postage prepaid and addressed to the following:

Jack E. Dusthimer
Attorney at Law
1503 Brady Street
Davenport, Iowa 52803

_____

U. S. Attorney's Office
U. S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tele: (515) 473-9300
Fax:  (515) 473-9292

22