### UNITED STATES COURT OF APPEALS
### FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>v.<br>JUSTIN TREANTON,  Defendant. | APPEAL IN A CRIMINAL CASE |

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF IOWA

### HON. STEPHANIE ROSE, CHIEF JUDGE

### PETITION FOR RE-HEARING / EN BANC
### BY APPELLANT, JUSTIN TREANTON

COMES NOW, the Appellant, JUSTIN TREANTON, (TREANTON) and petitions the Court for Rehearing En Banc and states:

1.    This Petition for Rehearing En Banc is pursuant to F.R.App.P. 35 & 40, and Cir.R. 40A(b).

2.    The Panel decision is dated January 18, 2023.

3.    The panel decision in this case involves one or more questions of exceptional importance.  See F.R.App.P. 35(b)(1)(B).

   a.    TREANTON's non-*Mirandized* statements were while he was "in custody" since this was after being punched, and handcuffed, and that he was never allowed to leave, and arrested at the end of the interrogation. The Panel's *de novo* review failed to note the objective evidence was he was in a custodial interrogation.

Appellate Case: 22-1476    Page: 1    Date Filed: 01/31/2023 Entry ID: 5240983

Second,

    b.    The Sentencing Judge's imposition of the statutory maximum sentence was not "sufficient, but not greater than necessary" and the Sentencing Judge abused her discretion in failing to impose a lessor sentence.

4.    Following is the Brief and argument thereon.

JUSTIN TREANTON, By,
**s/ Jack E. Dusthimer**
Jack E. Dusthimer Iowa Bar #000001356
1503 Brady Street
Davenport  Iowa  52803-4622
PHONE 563.323.8344        FAX:563.323.7452
jdusthimer@yahoo.com, jack@dusthimers.com

Appellate Case: 22-1476    Page: 2    Date Filed: 01/31/2023 Entry ID: 5240983

## SUMMARY OF THE CASE

JUSTIN TREANTON (TREANTON) requests an en banc reversal from his conviction, after a plea of guilty and subsequent panel denial. TREANTON plead guilty to child pornography offenses. The Plea Agreement preserved TREANTON's right to challenge the Order Denying the Motion to Suppress.

TREANTON's Plea was ultimately completed before a Magistrate Judge on November 5, 2021. The primary appeal is on the Motion to Suppress ruling. TREANTON also raised Sentencing abuse of discretion as he was sentenced to the statutory maximum sentence on the offenses.

Appellate Case: 22-1476    Page: 3    Date Filed: 01/31/2023 Entry ID: 5240983

# TABLE OF CONTENTS

SUMMARY OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT OF ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . 7

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Appellate Case: 22-1476     Page: 4     Date Filed: 01/31/2023 Entry ID: 5240983

# TABLE OF CITATIONS

## DECISIONS

*Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Miranda v. Arizona*, 384 U.S. 436 (1966).. . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Stansbury v. California*, 511 U.S. 318 (1994) .. . . . . . . . . . . . . . . . . . . . 12, 18

*United States v. Barron*, 557 F.3d 866 (8th Cir.  2009). . . . . . . . . . . . . . .  20

*United States v. Cook*, 842 F.3d 597  (8th Cir. 2016).  . . . . . . . . . . . . . . . . 12

*United States v. Ferguson*, 970 F.3d 895 (8th Cir. 2020).. . . . . . . . . . . 13, 18

*United States v. Giboney*, 863 F.3d 1022 (8th Cir. 2017). . . . . . . . . . . . . . 12

*United States v. Laurita*, 821 F.3d 1020 (8th Cir. 2016)). . . . . . . . . . . . . . 13

*United States v. Orozco-Rodriguez,* 220 F.3d 940 (8th Cir. 2000). . . . . .  20

*United States v. Parker*, 993 F.3d 595 (8th Cir. 2021). . . . . . . . . . . . . . . . 12

*United States v. Phelps*, 536 F. 3d 862 (8th Cir. 2008).  . . . . . . . . . . . . . . .  20

*United States v. Powills*, 537 F.3d 947 (8th Cir. 2008).  . . . . . . . . . . . . . .  20

*United States v. Tamayo-Baez*, 820 F.3d 308 (8th Cir. 2016).. . . . . . . . . . 12

*United States v. Watson*, 480 F.3d 1175 (8th Cir.2007). . . . . . . . . . . . . . .  20

*United States v. Whiting*, 522 F.3d 845 (8th Cir. 2008).  . . . . . . . . . . . . . . 19

*United States v. Williams*, 760 F.3d 811 (8th Cir. 2014). . . . . . . . . . . . . . . 13

*Williams v. New York*, 337 U.S. 241 (1949). . . . . . . . . . . . . . . . . . . . . . . . . 21

Appellate Case: 22-1476     Page: 5     Date Filed: 01/31/2023 Entry ID: 5240983

## STATUTES

18 U.S.C. §3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

28 U.S.C.§1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

## RULES OF PRACTICE

FRApP 28(j). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

FRApP 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-, -7-

## JURISDICTIONAL STATEMENT

This is a Petition for Re-Hearing / En Banc after the Eighth's Circuit's adverse ruling on January 18, 2023 in a criminal case.  The court has jurisdiction of the appeal pursuant to 28 U.S.C. §1291:  "The Court of Appeals...shall have jurisdiction of appeals from all final decisions of the district courts of the United States."

The Plea was before Magistrate Judge Jackson on November 5, 2021 and the Sentencing was before Judge Rose on February 28, 2022.

Appellate Case: 22-1476    Page: 6    Date Filed: 01/31/2023 Entry ID: 5240983

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

DIVISION I. TREANTON'S MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED AS THE OBJECTIVE EVIDENCE WAS TREANTON WAS "IN CUSTODY", SUCH THAT HIS UN-*MIRANDIZED* STATEMENTS SHOULD HAVE BEEN SUPPRESSED.

*United States v. Tamayo-Baez*, 820 F.3d 308 (8th Cir. 2016)

*United States v. Ferguson*, 970 F.3d 895 (8th Cir. 2020)

*Stansbury v. California*, 511 U.S. at 323 (1994).

DIVISION II. THE SENTENCING COURT ERRED IN IMPOSING THE MAXIMUM POSSIBLE SENTENCE - AND ABUSING ITS DISCRETION IN FAILING TO DETERMINE A SENTENCE "SUFFICIENT, BUT NOT GREATER THAN NECESSARY".

*Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007)

*United States v. Watson*, 480 F.3d 1175, 1177 (8th Cir.2007)

*Williams v. New York*, 337 U.S. 241 (1949)

7

Appellate Case: 22-1476    Page: 7    Date Filed: 01/31/2023 Entry ID: 5240983

STATEMENT OF THE CASE

Nature of the Case :     This Petition for Re-Hearing / En Banc is after TREANTON plead guilty to two child pornography counts. The Plea Agreement preserved the right to appeal TREANTON's Motion to Suppress denial. TREANTON was "in custody" when his non-*Mirandized* statements were made and the Motion to Suppress should have been sustained.

Course of Proceedings:  The Defendant TREANTON was charged in multiple Child pornography offenses.  Indictment September 9, 2020. R. Doc. 1. These arose, in part, after TREANTON's contact with police.

PRE TRIAL STATUS

TREANTON's prior counsel filed a Motion to Suppress for TREANTON'S statements and all evidence from that day. R. Doc. 33. As noted by the Court, within the Suppression hearing transcript: "*We are here for purposes of resolving the defendant's motion to suppress his custodial un-Mirandized statements and all evidence found as a result of and based upon those statements filed at Docket 33 on April 1st of 2021. The Government has filed a timely resistance to that petition*. Italics added, Suppression hearing Page 3 Line 12-16 (hereinafter Suppression 3L12-16).

Specifically, *"the real fighting issue in this case is whether or not the manner in which the defendant was initially encountered by Homeland Security officers and taken into custody initially impacts the manner in*

8

which his later statements should be viewed. [¶] I don't think there's any dispute here that during the hour and 45 minutes or so that he was being questioned by officers that he was not provided with a Miranda warning. I don't think there's any dispute that he was told that he was free to go, that he was told he didn't have to answer any questions if he didn't want to, and that he was told those things on multiple occasions. [¶] I think, as I understand it, the issue just becomes did whatever happened with his initial detention color everything else to such an extent that his later statements should be suppressed." Italics added. Suppression 4L11 - 5L1. The Court denied the Motion to Suppress, finding it was not a custodial interrogation, nor was TREANTON's will "overborne". Order dated June 29, 2021, R. Doc. 42, quoting page 6, 7.

The Panel decision noted: "*In the garage, agents found Treanton hiding behind stacks of boxes and debris. The agents instructed Treanton to climb over the debris toward them. Treanton began climbing but stalled due to conflicting instructions from the agents. An agent near the bay door then pulled Treanton down from the debris pile, and caused him to fall to the ground.[¶]The agents believed that they saw Treanton holding a large object and ordered him to show his hands. When Treanton refused, an agent punched him once in the face and placed him in handcuffs. The agents then searched Treanton. When they did not find a weapon, the agents removed the handcuffs and told Treanton that he was*

*not under arrest. [¶] Two agents walked Treanton to a vehicle near the garage for an interview. Once in the vehicle, the agents told Treanton several times that he was not under arrest. The agents also advised Treanton that he was free to leave whenever he wished, and did not have to answer any questions. Treanton talked with the agents for over ninety minutes and made incriminating statements about photos and videos that contained child pornography. He also consented to a search of his two cellular devices. Near the end of the interview, a county attorney instructed the agents to arrest Treanton on state criminal charges. The agents then informed Treanton of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and transported him to jail.* " Panel decision, January 18, 2023, pages 4-5, italics to note extended quotation, citation marked by underline.

## PLEA

No substantive issues arose from the Plea proceedings.

## SENTENCING

As noted in the Panel decision, page 5, *"The district court sentenced Treanton to a guideline sentence of 600 months' imprisonment, which was the statutory maximum term.*"

## STATEMENT OF THE FACTS:

Again, quoting the Panel decision: "*In January 2020, a computer user sent electronic files containing child pornography to an undercover*

10

*officer in New Zealand on a social media platform. The user identified himself as a thirty-five-year-old male from the United States, and told the officer that the files depicted his four-year-old daughter. The officer alerted federal law enforcement agents in the United States, and agents traced the user's internet protocol address to a house in Bettendorf, Iowa. Information about a driver's license and vehicle associated with the address revealed that Treanton was the only male resident aged thirty-five years.*" Decision, page 4.

## SUMMARY OF THE ARGUMENT:

TREANTON's Motion to Suppress (R. Doc. 33) should have been granted, as the objective evidence shows TREANTON was "in custody". His Sentence was unreasonable, under the totality of 3553(a) factors. A reversal on the Motion to Suppress should remand this case for further proceedings.

## ARGUMENT

DIVISION I.  TREANTON'S MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED AS THE OBJECTIVE EVIDENCE WAS TREANTON WAS "IN CUSTODY", SUCH THAT HIS UN-*MIRANDIZED* STATEMENTS SHOULD HAVE BEEN SUPPRESSED.

Applicable Standard of Review:  The appellate Court  reviews the denial of a motion to suppress *de novo* but the underlying factual determinations for clear error, giving due weight to inferences drawn by

Appellate Case: 22-1476     Page: 11     Date Filed: 01/31/2023 Entry ID: 5240983

law enforcement officials. *United States v. Tamayo-Baez*, 820 F.3d 308, 312 (8th Cir. 2016). TREANTON asserts his right to appeal from the Suppression hearing was preserved within the Plea Agreement. See ¶28, page 13-14, R. Doc. 53.

The issue is whether TREANTON was in custody during the interrogation - that is to say did TREANTON find it reasonable he was allowed to leave the police interaction, see below. The Panel decision stated TREATON did reasonably believe he could leave the police interaction.

"The Fifth Amendment requires that *Miranda* warnings be given when a person is interrogated by law enforcement after being taken into custody." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), *United States v. Parker*, 993 F.3d 595, 601 (8th Cir. 2021) (quoting *United States v. Giboney*, 863 F.3d 1022, 1027 (8th Cir. 2017)).

Importantly, "[s]eizure is a necessary prerequisite to *Miranda*." *United States v. Parker*, 993 F.3d 595, 601 (8th Cir. 2021) (citation omitted). "[n]ot all interactions between law enforcement officers and citizens amount to seizures." *United States v. Cook*, 842 F.3d 597, 600 (8th Cir. 2016). Whether an interaction between law enforcement and a citizen is a custodial interrogation is an objective one. See *Stansbury v. California*, 511 U.S. 318, 323 (1994) (determining if a suspect is in custody is based on the objective circumstances of the interrogation, not on subjective views by either law enforcement or the suspect).

12

A person is considered to be "in custody" when there is a "formal arrest or restraint [on his or her] freedom of movement of the degree associated with formal arrest." *United States v. Williams*, 760 F.3d 811, 814 (8th Cir. 2014). "To determine whether a suspect was in custody, we ask whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave." *United States v. Laurita*, 821 F.3d 1020, 1024 (8th Cir. 2016). This court considers six non-exhaustive factors when making this determination:

(1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest;

(2) whether the suspect possessed unrestrained freedom of movement during questioning;

(3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;

(4) whether strong arm tactics or deceptive stratagems were employed during questioning;

(5) whether the atmosphere of the questioning was police dominated; or,

(6) whether the suspect was placed under arrest at the termination of questioning. *United States v. Ferguson*, 970 F.3d 895, 901 (8th Cir. 2020).

13

This Court should independently determine (de novo) TREANTON was in a "custodial interrogation". Law Enforcement did say the "magic words" in an attempt to avoid "custodial" but it is otherwise clear the "magic words" were not enough.

It starts with TREANTON being found by law enforcement inside a excessively cluttered[1] "detached garage[2]". There was a front "overhead[3]" door and a "man[4]" door on the opposite side of the garage. DEA Task Force Officer[5] Carter opened the overhead door[6] and saw TREANTON climbing over the debris - headed the direction of the "man" door. Carter thought TREANTON was not making any progress towards the "man" door, nor returning to Carter, though Carter instructed him to do so. Suppression 13L17-22. At least one other officer recalled TREANTON "wasn't moving". Hopkins Suppression 43L 14. Officer Hopkins stated, I heard people -- or, excuse me, the officers, agents, for lack of a better term, barking orders inside. It sounded like they were yelling loudly at someone, and it sounded to me like they were giving commands -- typical commands

---

[1] "* * * a lot of clutter". McVey, Suppression 71L13.

[2] Suppression 9L23.

[3] Suppression 10L20.

[4] Suppression 10L24.

[5] Suppression 6L15-16.

[6] Suppression 11L7-8, 12L3-5.

14

of, "Come to the door," "Show us your hands," things like that, to the best of my recollection."  Hopkins, Suppression 43L18-23.

Carter says he was giving TREANTON unsuccessful commands to stop resisting, so Carter struck TREANTON "one time". Suppression 14L10-21, 15L20.  That was after Carter "directed him to the ground" "with some force."  "We're taking a full-grown man from on top of a four- to five-foot pile and taking him to the ground, and - - the minimal force required was used.  Hopkins, Suppression 47L15-20.  Carter knew the officers at the "man" door were also giving "commands". Suppression 20L 22.

TREANTON was first placed in handcuffs[7]. Suppression 15L25 - 16L1. Carter could not explain the injuries on TREANTON's face.  Suppression 17L9 - 13.  "I don't know if it was from when I initially placed him on the ground on the ice or if it was from the strike that I delivered." Carter, Suppression 17L22-24.  The photograph did not show all the blood from TREANTON.  Carter, Suppression 18L7-10. Another officer stated "There was an abrasion on Mr. Treanton's nose and maybe a drop of blood on his mouth, maybe his lower lip."  Officer Hopkins, Suppression 41L14-15. TREANTON was quoted as saying something like "He beat the  -  "He kicked the shit out of me," or something like that."  McVey, Suppression, 74L19-22. TREANTON could have been arrested merely for his resisting or not "cooperating".  Suppression 19L22 - 20L6.

---

[7]In the back.  McVey, Suppression 74L9-11.

Appellate Case: 22-1476     Page: 15     Date Filed: 01/31/2023 Entry ID: 5240983

TREANTON urges he was in custody. The second officer assisting in gaining control of TREANTON stated "we were able to **place him in custody -- or, excuse me, in handcuffs**, I mean." Bold added, Officer Hopkins statement, Suppression 40L16-17.

There was significant disappointment police were instructed to arrest TREANTON. It was the intentional plan during the pre-arrest briefing "we were not going to be arresting a suspect." Hopkins, Suppression 57L23. When Hopkins sees TREANTON with another agent (Special Agent Allen) handcuffs were on TREANTON. McVey, Suppression 59L8-15. McVey was irritated as TREANTON was in handcuffs, Special Agent Allen "tells him he's not under arrest * * *." McVey, Suppression, 60L7-13. "* * * he didn't escort him" to the passenger door[8], only "walked partway to the passenger side with him." McVey, Suppression 61L6-13.

The recording started before TREANTON entered the vehicle. TREANTON was in the front passenger seat. One agent was in the driver's seat, another in the back seat. McVey, Suppression 63L3-8. During this "interview" there were times where the agents left TREANTON in the vehicle by himself, so they could "interact". McVey, Suppression 63L11-18. One of the times was when a State County Attorney instructed that TREANTON be arrested for State charges. (McVey, Suppression, 65L6-8).

---

[8]of one of the police vehicles, to do the interview. McVey, Suppression 60L12-16.

Appellate Case: 22-1476    Page: 16    Date Filed: 01/31/2023 Entry ID: 5240983

This was contrary to the agent's initial plans "that there were not to be arrests made * * *." McVey, Suppression 65L9-12. McVey told Special Agent Allen the instructions were to arrest TREANTON on State charges. "[h]e was clearly upset with that conversation." [t]he purpose of your investigation was for federal charges * * *. McVey, Suppression 66L15-25. It was made clear at the briefing not to arrest TREANTON. McVey does not believe Detective Carter, the one who struck and handcuffed TREANTON, was at the staffing. McVey, Suppression 73L3-20.

While TREANTON was in the vehicle there were multiple, other, officers at the scene and multiple vehicles. See, generally, McVey, Suppression 76L7 - 77L24. By the time of the encounter between TREANTON and law enforcement there was already an investigation where "An offense had happened, yes[9]". There was probable cause to arrest. Allen, Suppression 94L13-14. Allen did not take the handcuffs off until TREANTON had been walked to McVey's vehicle. Allen, Suppression 95L1-7. This was "[A]bout a minute." Allen, Suppression, 96L18-21.

There was the intentional "briefing" decision NOT to arrest TREANTON. The agent's intent was TREANTON'S non-*Mirandized* statements could be intentionally used. This Court should rule this was a failed tactic by suppressing the statements and evidence.

---

[9]Almost immediately changed to "something had happened, yes." Allen, Suppression 99L7-10.

In de novo review the Court should determine TREANTON did not possess unrestrained freedom of movement. TREANTON likely knew he committed one, or multiple criminal activities, including resisting - which each could be an independent basis for arrest. TREANTON was handcuffed, behind his back and walked to the vehicle before the handcuffs were removed. TREANTON was struck by law enforcement and was injured in his facial area. The atmosphere of the questioning was police dominated.

While the officers tried desperately to convince TREANTON it was the intent NOT to arrest him, the actions speak louder than words. Using the *Ferguson* standards TREANTON did not possess unrestrained freedom. The recording started before he was walked to the police vehicle, and the handcuffs were not removed from behind his back until he was close to the vehicle. TREANTON was only contacted, when officers approached both sides of the garage where he was located, and both sets were giving TREANTON instructions to comply.

Out of the six *Ferguson* criteria the only standard which indicates TREANTON was free to go was the lip service given by the officers. To TREANTON he was in a custodial situation and the statements made should be suppressed. The determination of whether TREANTON was in custody is based on the objective circumstances. *Stansbury v. California*, 511 U.S. at 323 (1994). As a "reasonable person" TREANTON knew, under

18

the totality of circumstances, that he would NOT have felt at liberty to terminate the interrogation and leave.

DIVISION II.  THE SENTENCING COURT ABUSED ITS DISCRETION IN SENTENCING TREANTON WITH A SENTENCE BEYOND A SENTENCE "NOT GREATER THAN NECESSARY".

Applicable Standard of Review:  The appellate Court reviews the sentence imposed for reasonableness, first "ensur[ing] that the district court committed no significant procedural error." *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007); see also *United States v. Whiting*, 522 F.3d 845, 849 (8th Cir. 2008). If the district court's decision is "procedurally sound," the appellate court will review the sentence for substantive reasonableness under an abuse of discretion standard. *Gall*, 128 S.Ct. at 597; *Whiting*, 522 F.3d at 849. The appellate Court may apply a presumption of reasonableness to a sentence within the properly calculated guideline range but are not required to do so. See *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007); *Gall*, 128 S.Ct. at 597; *Whiting*, 522 F.3d at 849.

Counsel notes that the Suppression Ruling was specifically preserved as an appellate issue within the Plea Agreement, ¶28, Page 13-14 (R. Doc. 53), TREANTON asserts he likewise "preserve[d] the right to appeal any sentence imposed by the Court, to the extent that an appeal is authorized by law * * *."  Plea Agreement, ¶28, Page 13, R. Doc. 52.

Appellate Case: 22-1476     Page: 19     Date Filed: 01/31/2023 Entry ID: 5240983

In imposing a sentence under 18 U.S.C. § 3553(a), a sentencing court abuses its discretion if "it fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." *United States v. Watson*, 480 F.3d 1175, 1177 (8th Cir.2007). A district court need not recite all of the factors on the record, and it is not required to make a specific rejoinder to each argument advanced by the defendant. *United States v. Barron*, 557F.3d 866 (8th Cir. 2009).

The appellate court will review the record and determine whether the District Court was aware of its authority to vary downward and understood the pending argument for a reduction based on variance. That being said, the appellate court will not review the District Court's decision *not* to grant a request for downward variance, so long as the District Court was aware of the authority to do so, or the District Court had an unconstitutional motive for denying the variance. *United States v. Orozco-Rodriguez,* 220 F.3d 940, 942 (8th Cir. 2000), *United States v. Phelps*, 536 F. 3d 862, 868 (8th Cir. 2008) (constitutional language).

A sentence falling within a properly calculated Guidelines range is entitled to a presumption of reasonableness. *United States v. Powills*, 537 F.3d 947, 951 (8th Cir. 2008).

Argument: TREANTON urges the Sentencing Court should have ordered a

20

sentence for a shorter period of time.   Here the Court Sentenced TREANTON to the consecutive statutory maximum sentence on each of the two counts - such that the total sentence is 50 years (600 months).   See Judgment/Commitment, R. Doc. 74.

The En Banc should determine an abuse of discretion occurred when the Court failed to consider the totality of the sentence as imposed, including a failure of NOT providing any sentence reduction for Acceptance of Responsibility - to determine a sentence "not greater than necessary" [18 U.S.C. §3553(a)] in determining a punishment to fit the Defendant, not merely the offense.  *Williams v. New York*, 337 U.S. 241 (1949).  This is especially in light of TREANTON's unique factors, as argued below.

The main argument here is the differential between TREANTON's belief if the Sentencing Court would have given the appropriate weight to TREANTON's family circumstances, including his mental health concerns, and his desire to have his "acceptance of responsibility" rewarded by something less than the maximum sentence, consecutive.  The Court could have easily varied downward regarding a sentence "not greater than necessary" - especially in light of TREANTON's "acceptance".

Appellate Case: 22-1476    Page: 21    Date Filed: 01/31/2023 Entry ID: 5240983

CONCLUSION:

This Court should grant the Petition for Re-Hearing / En Banc and the matter should be remanded after the Ruling on the Motion to Suppress is reversed.

> JUSTIN TREANTON, By,
> **/S/ Jack E. Dusthimer**
> Jack E. Dusthimer ICIS AT 00002193
> 1503 Brady Street
> Davenport Iowa 52803-4622
> 563.323.8344 PHONE 563.323.7452 FAX

## CERTIFICATE OF SERVICE/ANTI VIRUS

I hereby certify that this document will be filed through the EM/ECF electronic filing system on January 31, 2023 and one copy each to the Appellee and Appellant, with the addresses noted. I also certify that the PDF version of this submission has been scanned to be free of virus's with Microsoft Security Essentials, updated this date.

> /s/ Jack E. Dusthimer

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation as it contains 3,604 words, excluding items listed in F.R.Ap.P. 32(f). I hereby further certify that I used Corel Word Perfect, Georgia Linotype, proportionally spaced face, 14-point size and that this Petition for Re-Hearing/En Banc in the manner consistent with the Rules, all as pursuant to F.R.A.P. 32(a)(7)(C) & 8th. Cir.R. 28A, as set forth in Rule 32.

> /s/ Jack E. Dusthimer

Appellate Case: 22-1476   Page: 22   Date Filed: 01/31/2023 Entry ID: 5240983